# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number: **21-00592-jw**

# ORDER

The relief set forth on the following pages, for a total of 7 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**03/22/2022**



*signature: John E. Waites*

US Bankruptcy Judge
District of South Carolina

Entered: 03/22/2022

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Charlton Derrick McBride,<br><br>　　　　　　　　　　　　Debtor. | C/A No. 21-00592-JW<br><br>Chapter 13 |

## SUPPLEMENTAL ORDER FOR MOTION TO INCUR DEBT

This matter comes before the Court upon Charlton Derrick McBride's submission of a proposed order seeking Court approval to incur debt post confirmation and the Chapter 13 Trustee's objection to the proposed order.[1]

## BACKGROUND

Charlton Derrick McBride ("Debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on March 4, 2021. Debtor's chapter 13 plan, which provided for, among other things, payment of 100% of all allowed unsecured claims, was confirmed on July 2, 2021. On January 20, 2022, through the filing of the proposed order, Debtor sought the Court's approval to incur debt to secure an SBA loan in the amount of $121,000 for his employment as a trucker.[2] Debtor, with the lender's consent, proposed to use a portion of the loan proceeds to pay off and complete his chapter 13 plan. As his case will be completed, the new loan will not be repaid as part of the bankruptcy case as an administrative expense or otherwise. According to SC LBR 3015-8 and the Court's Operating Order 21-04, Debtor served the proposed order on the Chapter

---

[1] District of South Carolina Local Bankruptcy Rule 3015-8 provides that "[a Chapter 13 debtor] may, *without court or trustee approval* … obtain credit" post-confirmation. Operating Order 21-04 ("Operating Order"), filed January 10, 2022, provides that a debtor may seek a court order approving the incurrence of debt/obtaining credit … by the filing of a motion and proposed order which also provides service on the trustee.

[2] The payments for the SBA loan are estimated at and not to exceed $619.00 per month for 337 months at 3.75% interest. No security interest in property is being granted by Debtor in exchange for the loan. Debtor will be paying the lender directly.

Page **1** of **6**

13 Trustee but was not required to serve all creditors. The Chapter 13 Trustee objected to the proposed order because she believed that, as a result of the loan, Debtor should be considered "engaged in business," and therefore, under 11 U.S.C. § 1304, he would be required to provide all creditors with notice of his intent to secure additional debt post-confirmation. At the hearing, the Trustee conceded that Debtor had never been previously identified as a Debtor engaged in business, Debtor had not been required to file monthly operating reports as required by Fed. R. Bankr. P. 2015(c)(1), and that this was the first time Debtor was seeking to incur debt related to a business during his bankruptcy case. Ultimately, the Chapter 13 Trustee's objection was resolved by an accommodation in which the Court allowed the Chapter 13 Trustee to provide ten days of notice to all creditors of Debtor's proposed order to incur post-confirmation debt. After the expiration of the notice period without any objection having been filed, the Court entered an order authorizing Debtor to incur debt post-confirmation to pay off his confirmed plan.

## CONCLUSIONS OF LAW

Despite the resolution of the matter before the Court, the Court believes that further discussion of the issues raised by the Chapter 13 Trustee's objection would be helpful to clarify parties' obligations under the Bankruptcy Code in similar circumstances. At the outset, the Court observes that the authorities regulating notice on such matters are newly enacted and the Trustee bears no fault or criticism for raising the issues for clarification.

Section 1304(b) imposes the notice and hearing requirements of 11 U.S.C. § 364(b) upon a Chapter 13 debtor only if that debtor is self-employed, "engaged in business," and is trying to secure additional unsecured debt outside of the ordinary course of business to be allowable as an administrative expense. *See* 11 U.S.C. § 364(b); *see also In re Loden*, 572 B.R. 211, 214-15 (Bankr. W.D. Ark. 2017). To be subject to the provisions of § 364 pursuant to § 1304, a debtor

must meet three factors: (1) be self-employed, (2) incur trade credit, and (3) use the trade credit to produce income through the self-employment and seek to repay the debt as an administrative expense under § 503(b)(1).

Before examining in detail the elements required for a chapter 13 debtor to be engaged in business and be bound by the requirements of § 364(b) pursuant to § 1304, the Court suggests the examination may be unnecessary in this case for two reasons. First, Debtor proposes to pay off and complete his case by paying all creditors provided for in the confirmed plan, including 100% of his allowed unsecured creditors' claims. Debtor also does not seek modification of his chapter 13 plan to treat this debt. Instead, he seeks to use the funds from the SBA loan to pay off his plan and obtain his bankruptcy discharge. Because no priority claim or security interest is being sought by Debtor to repay the lender, no existing creditors' claims could be adversely affected by this loan transaction. *Cf. In re Adamson Co. Inc.,* 29 B.R. 937 (Bankr. E.D.Va. 1983) (holding that when "the interests of other creditors may be prejudiced through the granting of § 364(c) priority, due process requires that such creditors have meaningful notice and an opportunity for a hearing.") (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950)). Under these circumstances, it appears that the notice and hearing requirements of § 364 are unnecessary in that there is no discernable negative effect on creditors, which would be the arguable basis for requiring notice to them, and therefore should not apply.

Second, while § 364(b) requires "notice and a hearing," under the Bankruptcy Code, the phrase "after notice and a hearing" means that action may be taken "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). Fed. R. Bankr. P. 9007 provides that "[w]hen notice is to be given under these rules, the court shall designate, if not otherwise specified

herein, the time within which, the entities to whom, and the form and manner in which the notice shall be given." Fed. R. Bankr. P. 2002, which generally addresses notices to creditors, does not address notices for motions to incur debt.  Fed. R. Bankr. P. 4001(c) sets forth procedures for a debtor to obtain authorization to obtain credit from the bankruptcy court where authorization is required prior to the debtor obtaining credit, but Rule 4001(c)(4) expressly provides that "subdivision (c) does not apply in a chapter 13 case."  Viewed together, these provisions indicate the criteria for notice in this instance are to be determined by the Court, and under SC LBR 3015-8 and the Operating Order,[3] the Court has, among other things, concluded that when Chapter 13 debtors attempt to obtain post-confirmation debt to pay off their Chapter 13 plan payment obligations, then notice of the incurring of such debt must only go to the Chapter 13 Trustee.  To the extent that the Chapter 13 Trustee believes that a debtor should not undertake the post-confirmation debt transaction, then the Trustee has the ability to object and be heard on the merits of the objection.

Furthermore, in examining the application of § 1304 and therefore § 364 to such a post confirmation transaction, the Chapter 13 Trustee, as the objecting party, would have the burden of establishing all the criteria required by 11 U.S.C. § 1304(a).  While it appeared that Debtor may be considered self-employed as a truck driver operating his business as an LLC,[4] the Chapter 13

---

[3]    The Operating Order also provides streamlined procedures that allow Chapter 13 debtors to secure additional debt post-confirmation to pay off secured creditors provided in a confirmed plan without procedural delay by stating as follows:
> [T]o the extent a debtor or lender seeks court approval, the debtor may seek a court order approving the incurrence of debt/obtaining credit or refinance current debt, including secured debt, if all current lienholders are paid in full by filing a motion and proposed order which also provides service on the trustee.

Operating. Ord. 21-04, slip op. (Bankr. D.S.C. Jan. 10, 2022) (Waites, J.).

[4]    The Court notes that one court has adopted the view that a debtor must be self-employed as a sole proprietor, rather utilizing a corporate form to operate, to be subject to the provisions of 11 U.S.C. § 1304. *See In re McCormick*, 3841 B.R. 594 (Bankr. S.D.N.Y. 2008).  Because neither debtor nor the Chapter 13 Trustee raised an issue as to whether a debtor operating an LLC may be self-employed for purposes of 11 U.S.C. § 1304(a), this issue remains undisturbed as the law of this case and should not be viewed as this Court's general acceptance that a debtor operating

Trustee argued that it was Debtor's attempt to incur debt outside of his normal business operations or "outside of the ordinary course of business" that triggered the noticing and hearing requirements imposed by 11 U.S.C. § 364(b) upon Debtor pursuant to 11 U.S.C. § 1304(b).  In addition, the Chapter 13 Trustee must establish that Debtor incurred "trade credit" in the production of his business's income.

The Bankruptcy Code does not expressly define "trade credit."  Nevertheless, when determining whether certain loans were made within the "ordinary course of business," one bankruptcy court noted that trade credit transactions are "substantially contemporaneous exchanges" rather than being characterized as "[l]ong term loans" which are more of "a form of capitalization" and are "not generally part of the debtor's day to day business activities."  *In re Bourgeious*, 58 B.R. 657, 660 (Bankr. W.D. La. 1986).  This distinction between trade credit and other forms of credit appears to be commonly recognized because "trade credit" has been defined as "a business-to-business (B2B) agreement in which a customer can purchase goods without paying cash up front and paying the supplier at a later scheduled date." Julia Kagan, *Trade Credit*, INVESTOPEDIA (May 28, 2021), https://www.investopedia.com/terms/t/trade-credit.asp.  Critically, the direct business-to-business relationship and short-term nature of trade credit transactions are a key characteristic of "trade credit" transactions because "[u]sually, businesses that operate with trade credit will give buyers 30, 60, or 90 days to pay…." *Id.*

During the hearing on Debtor's proposed order, however, there was no evidence presented by any parties detailing any "trade credit" transactions involving Debtor.  There was also no evidence regarding whether the proposed transaction was within or outside the ordinary course of his trucking business.  Accordingly, there was no demonstration that the provisions of 11 U.S.C.

---

an LLC constitutes self-employment as contemplated by § 1304(a).  This issue remains to be determined within the District of South Carolina.

§ 364 and its noticing requirements applied to Debtor's proposed loan transaction as provided by 11 U.S.C. § 1304.

Under the circumstances of this case, the Court finds that insufficient evidence was presented to impose the noticing requirements of § 364 upon Debtor pursuant to § 1304.  Further, the Court believes that sufficient due process was provided for Debtor's attempt to secure post confirmation debt for the express purpose of paying off his pending confirmed plan in full.  In similar circumstances of a plan payoff by a post confirmation loan, the Court finds no basis for a debtor seeking to incur debt under the procedures set forth in SC LBR 3015-8 and Operating Order to provide notice to all creditors involved in the debtor's Chapter 13 case. *See In re Murphy,* 474 F.3d 143, 150 (4th Cir. 2007) (noting that "a loan, regardless of the size, is not income. The apparent increase in [the debtor's] balance sheet [is] offset by the amount of the loan, resulting in virtually no change to their financial condition.")[7] With the full economic benefit of a confirmed Chapter 13 plan being fully paid at an earlier stage of a plan's repayment terms, this Court finds it difficult to foresee any creditor successfully objecting.[8]

**AND IT IS SO ORDERED.**

---

[7] In *In re Murphy,* the Fourth Circuit considered whether modification of a chapter 13 debtor's confirmed plan pursuant to §§ 1329(a)(1) or (a)(2) was required when a debtor proposed an early payoff of her plan through the refinancing of a mortgage and concluded that the refinancing loan transaction simply does not alter the financial condition of the debtor and, therefore, does not constitute a "substantial and unanticipated change in post confirmation financial condition" sufficient to provide a basis for modification under §§ 1329(a)(1) or (a)(2). 474 F.3d at 151.  The Circuit Court noted that "the debtor's early payoff coupled with his assumption of long-term debt works to the benefit of unsecured creditors, as the unsecured creditors receive the benefit of the bargain under the confirmed plan."

[8] In this case, none of the creditors that were provided with notice of Debtor's intent to obtain post-confirmation financing to pay off his obligations under the confirmed plan filed any timely objection.  This makes sense because Debtor's securing of additional post-confirmation debt to pay off his plan payments obligations in full early benefits his creditors by eliminating the risk of plan default by Debtor in the future.